IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LAURA MATHIAS, | ) | CASE NO. 1:12 CV 1335 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action by Laura Mathias under 42 U.S.C § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Pursuant to my initial[5] and procedural[6] orders, the parties have

---

[1] ECF # 12. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 7.

[4] ECF # 8.

[5] ECF # 5.

[6] ECF # 11.

briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

For the reasons set forth below, the decision of the Commissioner will be affirmed as supported by substantial evidence.

## Facts

**A.    Background facts and decision of the Administrative Law Judge ("ALJ")**

Matthias, who was born in 1958[11] and has two years of college,[12] claims disability beginning March 1, 1999, and continuing through June 30, 2003, the date last insured.[13] Her prior work experience was as a travel agent, retail manager, and computer specialist.[14]

The ALJ, whose decision became the final decision of the Commissioner, found that Mathias had the following severe impairments:

---

[7] ECF # 13 (Commissioner's brief); ECF # 16 (Mathias's brief).

[8] ECF # 13, Ex. 1 (Commissioner's charts); ECF # 16, Ex. 1 (Mathias's charts).

[9] ECF # 10 (Mathias's fact sheet).

[10] ECF # 18.

[11] Transcript ("Tr.") at 123.

[12] *Id.* at 141.

[13] *Id.* at 22.

[14] *Id.* at 60-61.

From March 1, 1999, through June 30, 2003, Mathias had the severe impairments of fibromyalgia and/or chronic fatigue syndrome and asthma.[15]

From December 1, 2000, through June 30, 2003, Mathias also had the severe impairments of macerated medial meniscal tear and chondromalacia in the patella, both in the right knee, status post arthroscopic surgery done in May 2001.[16]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ then made the following finding regarding Mathias's residual functional capacity ("RFC"):

After careful consideration of the entire record, I find that, from March 1, 1999, the alleged onset date, through June 30, 2003, the DLI, Ms. Mathias had and has had the residual functional capacity to perform work except for the following limits on Ms. Mathias's ability to work:

Subject to the additional restrictions listed below, Ms. Mathias could do work at the "sedentary" exertional level only.[17]

Ms. Mathias has to have the option to go from standing or walking to sitting, and from sitting to either standing or walking, at least once every 20 minutes.

Ms. Mathias could bend, stoop, crouch, squat, kneel, or crawl up to and no more than occasionally.

Ms. Mathias could climb steps and ramps up to and no more than occasionally.

Ms. Mathias could not climb ladders, ropes, or scaffolds.

---

[15] *Id.* at 141.

[16] *Id.* at 25-26.

[17] *Id.* at 29.

Ms. Mathias could not work in an environment where there would be exposure to fumes, chemicals, dust, or agricultural or landscaping pollens in concentrations that exceed what would be in the environment outside of or away from the workplace.[18]

In reaching this result, the ALJ expressly noted that many of Mathias's allegations regarding functional limitations concern symptoms or restrictions that manifested themselves after June 30, 2003, the date of last insured.[19] In that regard, the ALJ further noted that many of the treating sources or other opinions likewise failed to restrict their observations to the period at issue and/or were based on impressions gained after that period.[20]

Accordingly, based on the RFC stated above and with the testimony from a vocational expert, the ALJ found that from March 1, 1999, through June 30, 2003, Mathias (1) was able to perform her past relevant work as a travel agent and a computer specialist as those jobs are usually done in the national economy, and (2) could not perform her past relevant work as a retail manager as that work is usually done in the national economy.[21] The ALJ, therefore, found Mathias not under a disability.[22]

---

[18] *Id.* at 29-30.

[19] *Id.* at 31.

[20] *Id.* at 31-35.

[21] *Id.* at 35.

[22] *Id.* at 36.

-4-

**B.**     **Issues on judicial review**

Mathias asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Mathias presents three issues for judicial review:

- Whether the ALJ failed to apply correct legal standards and assign appropriate weight to the opinions of treating and examining physicians in regard to the evaluation of Mathias's chronic fatigue and fibromyalgia?

- Whether the ALJ's assessment of Mathias's credibility was insufficient even though a credibility assessment was a "problem" for the judge after the expiration of Mathias's insured status?

- Whether Mathias has provided material new evidence which warrants remand?[23]

For the reasons that follow, I will conclude that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

## Analysis

**A.**     **Standards of review**

*1.*     *Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact,

---

[23] ECF # 10 at 1.

if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[24]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[25] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[26]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2.    *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

---

[24] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[25] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[26] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

> Generally, we give more weight to opinions from your treating sources, since these medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[27]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[28]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[29] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[30]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[31] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[32] nevertheless, it must be "well-supported by medically acceptable

---

[27] 20 C.F.R. § 404.1527(d)(2).

[28] *Id.*

[29] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[30] *Id.*

[31] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[32] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

clinical and laboratory diagnostic techniques" to receive such weight.[33] In deciding if such

supporting evidence exists, the Court will review the administrative record as a whole and

may rely on evidence not cited by the ALJ.[34]

In *Wilson v. Commissioner of Social Security*,[35] the Sixth Circuit discussed the treating

source rule in the regulations with particular emphasis on the requirement that the agency

"give good reasons" for not affording controlling weight to a treating physician's opinion in

the context of a disability determination.[36] The court noted that the regulation expressly

contains a "good reasons" requirement.[37] The court stated that to meet this obligation to give

good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[38]

---

[33] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[34] *Id.* at 535.

[35] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[36] *Id.* at 544.

[37] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[38] *Id.* at 546.

-8-

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[39] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[40] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[41] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[42]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[43] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[44] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that

---

[39] *Id.*

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (2013).

[44] *Id.* at 375-76.

court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[45] *Blakley v. Commissioner of Social Security*,[46] and *Hensley v. Astrue*.[47]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[48] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[49] These factors are expressly set out in 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (3)-(6) and §§ 416.927(c)(2)(i)-(ii), (3)-(6).[50] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[51]

---

[45] *Rogers*, 486 F.3d at 242.

[46] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[47] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[48] *Gayheart*, 710 F.3d at 376.

[49] *Id.*

[50] *Id.*

[51] *Rogers*, 486 F.3d at 242.

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[52] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[53] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(c)(i)-(ii), (3)-(6) of the regulations,[54] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[55] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[56]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[57]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should

---

[52] *Gayheart*, 710 F.3d at 376.

[53] *Id.*

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] *Id.*

receive controlling weight.[58] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[59] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[60] or that objective medical evidence does not support that opinion.[61]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[62] The Commissioner's *post hoc* arguments on judicial review are immaterial.[63]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment.

---

[58] *Rogers*, 486 F.3d 234 at 242.

[59] *Blakley*, 581 F.3d at 406-07.

[60] *Hensley*, 573 F.3d 263 at 266-67.

[61] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[62] *Blakley*, 581 F.3d at 407.

[63] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147 (N.D. Ohio Jan. 14, 2010).

Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[64]

- the rejection or discounting of the weight of a treating source without assigning weight,[65]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[66]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[67]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[68] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[69]

---

[64] *Blakley*, 581 F.3d at 407-08.

[65] *Id.* at 408.

[66] *Id.*

[67] *Id.* at 409.

[68] *Hensley*, 573 F.3d at 266-67.

[69] *Friend*, 375 F. App'x at 551-52.

-13-

The Sixth Circuit in *Blakley*[70] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[71] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[72]

In *Cole v. Astrue*,[73] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[74]

## B.    Applications of standards

Mathias challenges the ALJ's decision on three grounds. First, she argues that the ALJ did not properly analyze and weigh the opinion of the treating physician, Carol Noall, M.D. Second, she maintains that the ALJ improperly analyzed her credibility in the earlier time frame. Finally, she posits that new and material evidence justifies a remand. Dr. Noall

---

[70] *Blakley*, 581 F.3d 399.

[71] *Id*. at 409-10.

[72] *Id*. at 410.

[73] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[74] *Id.* at 940.

provided two evaluations. The first was a Bureau of Disability Determination form completed by Dr. Noall in January of 2007.[75] That evaluation provided some basic information regarding diagnosis and medications but little or nothing regarding limitations.

Dr. Noall provided the second opinion in a letter to Mathias's counsel in January of 2010. This evaluation summarized Dr. Noall's diagnosis and treatment of Mathias from 1999 through a referral to Dr. Calabrese of the Cleveland Clinic in 2004.[76] Dr. Noall discusses a series of infections and resulting fatigue that culminated in Dr. Calabrese's diagnosis of chronic fatigue syndrome.[77] Her only statement regarding limitations is that Mathias may have been able to work an eight-hour day from time to time in 1998 and 1999 but thereafter would not have been able to work 50 weeks per year because of her sickness and fatigue.[78] Interestingly, although Dr. Noall wrote this letter four years after she ceased to treat Mathias, and seven years after the date of last insured, Dr. Noall makes reference to reviewing copies of her "old records from a previous office"[79] furnished to her by Mathias's attorney. Nevertheless, these records are not part of the transcript in this case. The ALJ in his decision

---

[75] Tr. at 214-16.

[76] *Id.* at 263-66.

[77] *Id.* at 263-64.

[78] *Id.* at 264-66.

[79] *Id.* at 263.

discusses Dr. Noall's January 2010 letter extensively[80] but concludes that he cannot by extrapolation consider her opinion stated in 2010 valid and applicable as of 2003.

As the Commissioner himself concedes, there is little doubt that the ALJ did not strictly analyze the opinion of Dr. Noall within the guidelines of *Gayheart*. The ALJ does not make a statement regarding controlling weight and does not assign any weight to Dr. Noall's opinion. Specifically, there was no two-element review at step one of whether the opinion should be accorded controlling weight, followed by a distinctly separate inquiry into the amount of weight to accord.

That said, however, the second element of the first step analysis prescribed by *Gayheart* involves an inquiry into whether the opinion is well-supported by clinical and diagnostic evidence. Here, the ALJ clearly and extensively states on the record his reasons for concluding that Dr. Noall's 2010 opinion is not well-supported by such evidence. Essentially, he notes that Dr. Noall's own notes show that Mathias was not having any problems with bleeding or fatigue in April, 2003, and that her fatigue only worsened by the end of 2003 and into 2004 – after the date last insured – when she was referred to a specialist.[81] It was only after the 2004 referral to Dr. Calabrese that the diagnosis was made of chronic fatigue syndrome.[82]

---

[80] *Id.* at 32-33.

[81] *Id.* at 32.

[82] *Id.*

-16-

Thus, absent other records – which the ALJ suspected might have existed but were not before him – the ALJ stated that he could not find evidence to support Dr. Noall's 2010 opinion that Mathias was disabled on or before June 30, 2003.[83]

Although, as noted, this does not technically comply with the rubric of *Gayheart*, the essence of the mandated inquiry exists plainly on the record, where it can provide the basis for meaningful judicial review. As such, I find that the essential examination required by *Gayheart* as concerns the opinion of a treating source has been conducted on the record and in a way that is reviewable. Therefore, I further find that good reasons were given to not accord Dr. Noall's opinion controlling weight.

Further, I note that Mathias's counsel – who did not represent her below – had no explanation as to why counsel at the administrative level failed to place Dr. Noall's notes in the record, even though the ALJ had left the record open and new evidence was submitted to the Appeals Council – although such evidence did not include Dr. Noall's notes. As I stated on the record at the oral argument herein, this placed the ALJ at a decided disadvantage – especially when he surmised that additional evidence existed.

Likewise as to credibility, I observe that the ALJ noted that all of her allegations in the record related to her condition after the date of last insured.[84] It appears that Mathias on advice of counsel refused to complete the Agency's questionnaire regarding her limitations[85]

---

[83] *Id.*

[84] *Id.* at 31.

[85] *Id.* at 154.

-17-

and testified at the hearing before the ALJ only as to her then current limitations. I questioned counsel for the Commissioner at the oral argument about why the ALJ would not inquire about limitations during the relevant time period, and he had no good explanation. He did point out that Mathias was represented at the hearing, and the ALJ did afford an opportunity for counsel to put anything else on the record he deemed relevant.[86] It is true, as Mathias argues, that no meaningful analysis of credibility during the relevant time period was done by the ALJ in his decision. That said, the claimant has the burden of proof at step four.

Finally, the two pieces of evidence provided as the basis for the remand, a letter from a consulting neurologist written in 2000,[87] and a letter from a consulting allergy doctor to counsel sent in 2012,[88] do not seem to meet the requirement for "new" evidence. The 2000 letter certainly existed as of the time of the administrative proceedings, and no good cause is given for failure to make it part of the record before the ALJ. Although the 2012 letter clearly was written after the ALJ's decision in this case, its subject matter refers to treatment given to Mathias from 1999 until 2002. No good cause is given for not placing this information in the record at an earlier date.

Finally, although both of these letters make reference to fatigue, none discuss any limitations from that fatigue. They are, therefore, of questionable materiality.

---

[86] *Id.* at 73.

[87] *Id.* at 271.

[88] *Id.* at 269.

-18-

Although the ALJ's decision is certainly not perfect, and there are technical problems with the treating physician rule and with the ALJ's failure to make inquiry as to limitations during the relevant time period, this is a case in which the Commissioner's decision is supported by substantial evidence and so affirmed.

## Conclusion

Substantial evidence supports the finding of the Commissioner that Mathias had no disability. Accordingly, the decision of the Commissioner denying Mathias disability insurance benefits is affirmed.

IT IS SO ORDERED.


Dated: September 27, 2013                      s/ William H. Baughman, Jr.                      
                                               United States Magistrate Judge

-19-